NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RASHEED WILLIAMS, | : |
| Petitioner, | : Civil Action No. 19-20511 (CCC) |
| v. | : **OPINION** |
| UNITED STATES OF AMERICA, | : |
| Respondent. | : |

**CECCHI, District Judge**

*Pro se* petitioner Rasheed Williams ("Petitioner"), a federal prisoner at FMC Devens, moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 16-1. Before the Court are Petitioner's (1) amended § 2255 motion (ECF No. 16-1); (2) "Combined Motion to File and Docket Corrected Motion to Vacate Convictions and Sentences in Both Petitioner's Drug/Firearm and Revocation of Supervised Release Cases as Intended and Motion to Consolidate" (ECF No. 15); (3) "Combined Motion: to Clarify, to Conduct an Evidentiary Hearing, to Conduct Discovery, and to Expand the Court Record" (ECF No. 16); and (4) "Motion to Expedite/Motion to Be Released on Bail" (ECF Nos. 20, 21). For the reasons discussed below, the motions will be denied and a certificate of appealability shall not issue.

## I.    BACKGROUND

### A.  The 2008 and 2018 Convictions

On January 7, 2008, Petitioner pleaded guilty to a two-count indictment charging him with: (1) distributing and possessing with the intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii), and 18 U.S.C. § 2; and (2) being a felon in

possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Crim. No. 07-511, ECF No. 77 (indictment); *id.*, ECF No. 78 (minute entry for guilty plea); *id.*, ECF No. 86 (corrected plea agreement).  The Honorable Dickenson R. Debevoise sentenced Petitioner to 110 months of imprisonment on each count, to be served concurrently, followed by five years of supervised release.  *Id.*, ECF No. 89 (judgment).  Petitioner violated the conditions of his supervised release, and on March 1, 2016, the Honorable Madeline Cox Arleo revoked Petitioner's supervised release and ordered him to serve eight months of imprisonment, followed by two years of supervised release.  *Id.*, ECF No. 104 (revocation of supervised release judgment).

On September 2, 2017, Petitioner was arrested in connection with a drug trafficking investigation.  Crim. No. 18-158, ECF No. 1 (criminal complaint).  Law enforcement recovered from Petitioner's person approximately 16 bags of crack cocaine, 14 wax folds of heroin, four bags of marijuana, and a gun locking key on Petitioner's key ring.  ECF No. 18, Ex. A (presentence investigation report ("PSR")), ¶ 11.  Law enforcement searched Petitioner's residence and found in his bedroom approximately 60 containers of suspected crack cocaine and materials used for packaging narcotics for distribution.  PSR ¶ 12.  Law enforcement also found a stolen semi-automatic pistol in the kitchen, loaded with ammunition, and additional rounds of ammunition.  *Id*.

On February 15, 2018, Petitioner entered into a plea agreement with the Government.  Crim. No. 18-158, ECF No. 18 (plea agreement).  He agreed to plead guilty to a two-count information charging him with (1) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and (2) possessing with the intent to distribute heroin and crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  Crim. No. 18-158, ECF No. 18 at 1.  Petitioner agreed to stipulate at sentencing "that the Court should sentence [him] within the Guideline range that results from the total Guidelines offense level set forth" in Schedule A attached to the plea

agreement, and that he would not "argue for the imposition of a sentence outside the Guidelines range that results from the agreed total Guidelines offense level." *Id.* at 3, 9. The parties also agreed that "[b]ecause [Petitioner] possessed the firearm in connection with another felony offense, namely a controlled substance offense, the Base Offense Level is increased by 4 levels." *Id.* at 9 (citing U.S.S.G. § 2K2.1(b)(6)(B)). The parties' agreed that the total Guidelines offense level was 23. Crim. No. 18-158, ECF No. 18 at 10. On March 28, 2018, Petitioner pleaded guilty. *Id.*, ECF No. 14 (information); *id.*, ECF No. 24 (plea hearing transcript) at 23–24.

Following Petitioner's guilty plea, the U.S. Probation Office prepared a PSR which calculated Petitioner's total offense level as 23 and his criminal history category as Category IV, resulting in a guideline imprisonment range of 70 to 87 months. PSR ¶ 94. On July 18, 2018, the Honorable Jose L. Linares sentenced Petitioner to a term of imprisonment of 78 months, followed by a three-year term of supervised release. Crim No. 18-158, ECF No. 22 (judgment); *id.*, ECF No. 23 (sentencing hearing transcript) at 15–16.

On August 13, 2018—because Petitioner violated the conditions of supervised release imposed by Judge Arleo on March 1, 2016, by committing the crimes underlying the 2018 convictions—Judge Arleo again revoked Petitioner's supervised release and ordered him to serve 33 months of imprisonment, with no additional term of supervised release. Crim No. 07-511, ECF No. 120 (minute entry); *id.*, ECF No. 121 (revocation of supervised release judgment) at 2.

**B.  Section 2255 Motion**

On July 2, 2019, Petitioner filed a § 2255 motion, which was assigned case number 19-15019, asserting that counsel was ineffective (1) "at sentencing" for the 2018 convictions, for failing to object to the application of the four-level enhancement to Petitioner's base offense level because the Government "failed to establish a sufficient nexus between the firearm possession and

the drug possession felony"; and (2) in connection with the August 13, 2018, revocation of supervised release, for failing to argue that the Court exceeded its authority by sentencing Petitioner "to an additional supervised release in excess of his original term of supervised release." 19-15019, ECF No. 1 at 4; *id.*, ECF No. 1-1 at 3–4. On August 28, 2019, the Government filed an answer. *Id.*, ECF No. 2. On October 25, 2019, the undersigned ordered the action administratively terminated until Petitioner filed a signed motion on the proper form. *Id.*, ECF No. 5.

On November 20, 2019, Petitioner initiated a new action by filing a signed § 2255 motion on the proper form, which was assigned the case number in the instant action. ECF No. 1. Petitioner re-asserted the claims from his July 2, 2019, petition (ECF No. 1 at 4–5), and further argued that counsel was ineffective for advising Petitioner "to plead guilty to an unsupported finding of a violation of the § 922(g) statute" in light of the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). *Id.* at 9.[1] On February 21, 2020, the Government opposed the motion, arguing that Petitioner's original claims fail on the merits, and his new claims are time barred and, in any event, also fail on the merits. ECF No. 5. at 7.

On January 10, 2022, Petitioner moved for leave to amend. ECF No. 11. Petitioner's amended petition incorporated his previous grounds for relief and added that counsel was also ineffective for failing to investigate a defense, failing to advise Petitioner about the penalties he faced, acting against Petitioner's interests, advising Petitioner to waive his right to indictment by a grand jury, advising Petitioner to plead guilty pursuant to a "legally inapplicable plea agreement rending his guilty plea involuntary," failing to object to "enforced prejudicial enhancements in the

---

[1] On December 16, 2021, Petitioner initiated another action by filing another § 2255 motion asserting identical grounds for relief, which was assigned case number 21-20610 and proceeded before Judge Arleo. 21-20601, ECF No. 1 at 4, 6–7. On May 9, 2022, Judge Arleo ordered (1) Petitioner's filings in 21-20610— ECF Nos. 1 and 2—to be docketed in the instant case; and (2) case number 21-20610 to be administratively terminated. 21-20610, ECF No. 5.

4

[PSR] at [his] drug/firearm case sentencing," failing to object "to [the] consecutively imposed 33-month prison term at [his] revocation of supervised release sentencing," and failing to consult with him about an appeal. ECF 11-3 at 1–3. The Government did not file an opposition to Petitioner's motion to amend. On April 7, 2022, the Court granted the motion and directed Petitioner to file an amended § 2255 motion on the proper form which includes "*all* claims which Petitioner wishes to assert." ECF No. 12 at 2 (emphasis in original). Petitioner was advised that the amended motion would "supersede all other filings related to his convictions." *Id.*

On May 9, 2022, Petitioner filed (1) a "Combined Motion to File and Docket Corrected Motion to Vacate Convictions and Sentences in Both Petitioner's Drug/Firearm and Revocation of Supervised Release Cases as Intended and Motion to Consolidate" (ECF No. 15);[2] (2) a "Combined Motion: to Clarify, to Conduct an Evidentiary Hearing, to Conduct Discovery, and to Expand the Court Record" (ECF No. 16); and (3) another amended § 2255 motion, which Petitioner asserts "replaces . . . all previously filed ineffective assistance of counsel . . . claims in this case" (ECF No. 16-1 at 14).[3] He argues in his amended § 2255 motion that (1) counsel was ineffective for failing "to adequately investigate Petitioner's defense and file a meritorious motion to suppress evidence" (ECF No. 16-1 at 5); (2) counsel was ineffective for inducing Petitioner's guilty plea by "misadvising [him] about the penalties [he] faced, minimizing the strength of [his] defense, misadvising [him] about the sentence he would receive, and advising [him] to enter into

---

[2] This motion will be denied as moot because the Court already consolidated Petitioner's § 2255 matters and granted his request to file an amended motion addressing the two challenged sentences. ECF No. 12.

[3] Two amended § 2255 motions were filed on May 9, 2022. The amended motion at ECF No. 16-1 is dated May 2, 2022, and, as stated above, Petitioner asserts that it replaces all previously filed ineffective assistance of counsel claims. ECF No. 16-1 at 14. The amended motion filed at ECF No. 14 is dated December 13, 2021, and appears to have been docketed on May 9, 2022, as a result of Judge Arleo's order directing Petitioner's filings in 21-20610 to be docketed in the instant case. 21-20610, ECF No. 5. Thus, ECF No. 16-1 is the operative § 2255 motion.

a prejudicial plea agreement" (*id.* at 6); (3) the plea agreement is unenforceable because he received ineffective assistance of counsel (*id.* at 8); and (4) counsel was ineffective for "failing to counsel Petitioner about an appeal and failing to file an intended appeal" (*id.* at 9).   The Government responded to Petitioner's § 2255 motion in July 2022, arguing that the newly added claims are time barred, and all of the claims are without merit.  ECF No. 18.  Petitioner replied in August 2022.  ECF No. 19.  In November 2022, he filed a "Motion to Expedite/Motion to Be Released on Bail."  ECF Nos. 20, 21.

## II.   DISCUSSION

### A.  Legal Standard Applicable to § 2255 Motions

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds:  (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; or (3) "that the sentence was in excess of the maximum authorized by law."  28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing entitlement to § 2255 relief.  *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005).  Moreover, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982); *see also United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) ("[A] motion pursuant to 28 U.S.C. § 2255 is reviewed much less favorably than a direct appeal of the sentence.").  In considering a § 2255 motion, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record."  *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). "It is the policy of the courts to give a liberal construction to *pro se* habeas petitions."  *Rainey v.*

*Varner*, 603 F.3d 189, 198 (3d Cir. 2010) (citation omitted).  The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief.  *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11-4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545–46).

### B.  Standard For Ineffective Assistance of Counsel Claims

To prevail on a claim of ineffective assistance of counsel, Petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, he must show that his counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688.  A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; thus, the court's scrutiny of counsel's performance "must be highly deferential." *Id.* at 689.

Second, Petitioner "must show that the deficient performance prejudiced the defense." *Id.* at 687.  In the context of a guilty plea, this means that a defendant "must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).  In other words, a defendant claiming that ineffective assistance "led to the improvident acceptance of a guilty plea" must show "a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." *Id.* at 162 (brackets omitted).

Both prongs must be established to set forth a valid claim; however, "[a] court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Strickland*, 466 U.S. at 668.

### C.  The 2018 Convictions

Petitioner alleges that counsel was ineffective during the proceedings for the 2018 convictions for failing to move to dismiss the charges for violation of the Speedy Trial Act (*id.* at 37–38); failing to "adequately investigate Petitioner's defense" (ECF No. 16-1 at 5); failing to file a meritorious motion to suppress" the firearms evidence (*id.* at 31–34, 38–39); and "misadvise[ing] [Petitioner] that he was a career offender" and "that his only choice was to plead guilty to avoid a 5-year consecutive sentence under 18 U.S.C. § 924(c)" (ECF No. 16-1 at 44–45).  Petitioner contends that this alleged ineffective assistance induced him to plead guilty, and rendered his plea involuntary and the plea agreement unenforceable.  ECF No. 16-1 at 35–46.  He alleges that he suffered prejudice because "had he been competently advised of the . . . meritorious defense [arising out of the alleged Speedy Trial Act violation and invalid search warrant], it would have been rational for [him] to reject the . . . plea agreement" and instead "exercise his Fifth Amendment right to indictment by a grand jury and seek suppression of the evidence against him."  ECF No. 16-1 at 45–46.  He further asserts that counsel was ineffective for failing to object to the four-level enhancement under U.S.S.G. § 2k2.1(b)(6) for possession a firearm in connection with another felony offense (here, the controlled substance offense) that was applied to his Guidelines calculation.  ECF No. 16-1 at 45–46.

The Government asserts that (1) all of the claims are untimely except for the claim asserted in the original § 2255 motion that counsel failed to object to the four-level enhancement, and (2) all of the claims are without merit.  ECF No. 18.  The Court agrees.  For the reasons set forth below, (1) the Speedy Trial Act, failure to investigate, motion to suppress, alleged incorrect advice

that Petitioner was a career offender, and involuntary and unknowing plea claims (collectively, the "Pre-sentencing Claims") are untimely, and (2) the Pre-sentencing Claims and enhancement claim are without merit.

### 1. Timeliness

Petitioner was sentenced on July 18, 2018, and did not file a direct appeal. On July 2, 2019, he filed his initial § 2255 motion asserting that counsel was ineffective "*at sentencing*" for the 2018 convictions for failing to object to the application of the four-level enhancement. 19-15019, ECF No. 1 at 4 (emphasis added); *see also id.*, ECF No. 1-1 at 4 ("trial counsel was ineffective *at the sentencing stage*") (emphasis added); *id.*, ECF No. 1-1 at 3–8. He did not file the Pre-sentencing Claims until 2022. ECF 11-3 at 1–3; ECF No. 16-1 at 14. As this was well outside the one-year limitations period, *see* 28 U.S.C. § 2255(f)(1), those claims are untimely unless they relate back to his timely filed § 2255 motion.

> Pursuant to Rule 15(c), an amendment that is otherwise untimely "relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has cautioned that courts should not interpret "conduct, transaction, or occurrence" in such a broad manner so as to construe essentially all amendments as permissible under the relation-back doctrine. *See Mayle v. Felix*, 545 U.S. 644, 656–57 (2005). For example, in the habeas context, the Supreme Court has refused to interpret "conduct, transaction, or occurrence" as broadly encompassing a "habeas petitioner's trial, conviction, or sentence," reasoning that "[u]nder that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." *Id.* Instead, it has counseled that an amendment relates back to a habeas petition under Rule 15(c) "[s]o long as the original and amended petitions state claims that are tied to a *common core of operative facts.*" *Id.* at 664 (emphasis added).

> In "search[ing] for a common core of operative facts in the two pleadings," *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004), courts should remain aware that "the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended

to provide,'" *Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012). "Thus, only where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds' will relation back be allowed." *Glover*, 698 F.3d at 146 (quoting *Bensel*, 387 F.3d at 310). For example, we have held that "amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction[,] or occurrence in the preceding pleading fall within Rule 15(c)" because the opposing party will have had sufficient notice of the circumstances surrounding the allegations contained in the amendment. *Bensel*, 387 F.3d at 310.

*United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019).

Petitioner cannot make the requisite showing that the Pre-sentencing Claims relate back to the claims in the original motion. As to the 2018 convictions, his initial motion contained only the claim that counsel failed to object to the enhancement at Petitioner's sentencing. 19-15019, ECF No. 1 at 4; ECF No. 1-1 at 3–8. In contrast, the Pre-sentencing Claims all involve allegations related to counsel's performance during the pretrial and guilty-plea stages of Petitioner's criminal proceedings. These claims are not tied to the common core of operative facts—counsel's alleged deficient performance at the sentencing stage of the proceedings—set out in the original motion. *See Whitaker v. Superintendent Coal Twp. SCI*, 721 F. App'x 196, 202 (3d Cir. 2018) (claim concerning counsel's conduct at trial did not relate to claim concerning counsel's conduct before trial); *United States v. Golson*, No. 10- 339, 2017 WL 2985411, at *4 (M.D. Pa. July 13, 2017) ("Just because his initial 2255 motion was grounded in ineffective assistance of counsel does not mean that any and all new ineffective-assistance claims automatically relate back."). Thus, as Petitioner cannot benefit from the relation-back doctrine, the Pre-sentencing Claims are untimely and will be dismissed on this basis.

### 2.  The 2018 Conviction Claims are Without Merit

Even if the Pre-sentencing Claims did relate back to the original motion, Petitioner would not be entitled to habeas relief because those claims, as well as the enhancement claim, also fail on the merits.

### a.  Petitioner's Challenge to his Plea

As an initial matter, the record contradicts Petitioner's argument that his plea was involuntary.  It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that create a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. James*, 928 F.3d 247 (3d Cir. 2019). A thorough colloquy provides "substantial protection against later claims that the plea was the result of inadequate advice" as to those areas that were raised and sufficiently explored as part of the colloquy.  *Missouri v. Frye*, 566 U.S. 134, 142 (2012).  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Blackledge,* 431 U.S. at 74.  "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017).

Here, Petitioner's plea agreement set forth the relevant charges and Guidelines calculation, which included the four-level Base Offense Level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B).  Crim. No. 18-158, ECF No. 18 at 9.  The agreement provided that, in exchange for Petitioner's guilty plea, the Government would "not initiate any further criminal charges against [him] for drug trafficking, possessing a firearm, or possessing a firearm in relation to a drug trafficking crime on or about September 2, 2017, in Essex County, New Jersey." *Id.*, ECF

No. 18 at 1.  Petitioner acknowledged that he read the agreement; discussed it and all of its provisions with his attorney, including, *inter alia*, those provisions addressing the charge, sentencing, stipulations and waiver; fully understood the agreement and accepted its terms; understood that no additional promises had been made; and wanted to plead guilty pursuant to the agreement. *Id.*, ECF No. 18 at 8.

At his plea hearing, the Court advised Petitioner that the purpose of the hearing was to (1) determine whether he was pleading guilty of his own free will and was competent to enter into a knowing agreement to enter a plea of guilty; (2) ensure that he understood the consequences of pleading guilty; and (3) make sure that he was, in fact, guilty of the charged offenses.  *Id.*, ECF No. 24 at 5.  After confirming that Petitioner was not under the influence of any substance affecting his ability to understand the proceedings and that he was able to read, write, and understand the English language, the Court engaged in the following colloquy with him regarding the plea agreement:

> THE COURT: Did you have enough time to speak to [counsel] in connection with this matter?
>
> MR. WILLIAMS: Yes.
>
> THE COURT: Has he answered any questions that you had with regard to the potential penalties or the plea agreement?
>
> MR. WILLIAMS: Yes.
>
> THE COURT: Did he discuss the plea agreement with you?
>
> MR. WILLIAMS: Yes.
>
> THE COURT: Did you read the plea agreement yourself?
>
> MR. WILLIAMS: Yes.
>
> THE COURT: Were you able to ask him any questions about what the words in there mean or what the plea agreement meant?
>
> MR. WILLIAMS: Yes. I understood it perfectly when I read it.
>
> THE COURT: Did he answer any questions that you had to your satisfaction?
>
> MR. WILLIAMS: Yes.

THE COURT: Are you satisfied with his service in connection with this matter?

MR. WILLIAMS: Yes.

THE COURT: Any questions that you need to ask me or your lawyer at this time about the plea agreement or what any words or phrases in there mean?

MR. WILLIAMS: No.

THE COURT: Now, the plea agreement is supposed to set forth accurately what you expect to get back in exchange for pleading guilty. Having read the plea agreement, do you think it sets forth and indicates appropriately what you think you are going to get in exchange for pleading guilty?

MR. WILLIAMS: I just say I understood it based on an offense level 23.

THE COURT: Right.

MR. WILLIAMS: And anything above that, I could challenge that. Anything within that range or under that range, that I can't challenge it. But for the most part, I understood it.

THE COURT: That is your waiver of your appeal rights. In other words, if I were to sentence you at a level 23 or less, you are waiving your right to appeal. Do you understand that?

MR. WILLIAMS: Yes.

THE COURT: That is under the guidelines, and I am the only one who will decide the guideline range.

MR. WILLIAMS: Yes.

THE COURT: If you enter a plea of guilty, you will not be allowed to take back your guilty plea, if I end up imposing a sentence that is different than you anticipate.

Do you understand that?

MR. WILLIAMS: Yes.

THE COURT: However, if I sentence you at level 23 of the guidelines or less, you would have waived your right to appeal. Do you understand that?

MR. WILLIAMS: Yes.

THE COURT: Has anybody threatened or coerced you or forced you in any way into entering into this plea agreement?

MR. WILLIAMS: No.

THE COURT: Is this something that you want to do of your own free will?

MR. WILLIAMS: Yes.

*Id.*, ECF No. 24 at 7–10.  The Court also advised Petitioner that he had a Constitutional right to have his case heard by a grand jury, confirmed that Petitioner wanted to waive that right, and determined that Petitioner's waiver was knowing and voluntary.  *Id.*, ECF No. 24 at 11–12.

The Court then explained to Petitioner the consequences of pleading guilty, including that the Court was not bound by the plea agreement (*id.* at 12, 16–19 (also explaining the maximum penalties for the charges)); due to Petitioner's prior felony conviction he would be subject to harsher penalties if he were to commit another crime in the future (*id.*, at 13); he is waiving his right to a jury trial (*id.* at 13–16 (also explaining the rights associated with a jury trial and the elements of the charges the Government would be required to prove)); and that there is no parole in the federal system (*id.* at 14).  Petitioner confirmed that he understood these consequences (*id.* at 20), and that he was pleading guilty to the charges in the information because he was guilty of committing the crimes charged (*id.* at 21–23).  The Court then accepted Petitioner's plea "as a knowing and voluntary plea supported by the facts." *Id.* at 24.

In light of (a) Petitioner's acknowledgment in the plea agreement that he read the agreement, fully understood its terms, and wanted to plead guilty pursuant to the agreement; (b) his acknowledgment under oath and in open court that he understood the terms of the agreement and the consequences of pleading guilty, and that he committed the crimes charged; and (c) the Court's finding that Petitioner's plea was of his own free will, Petitioner's argument that his plea was involuntary is wholly without merit.  Indeed, the record reflects that he fully understood the scope of his rights, the charges against him, and the consequences of pleading guilty.  Thus, even if this claim were timely, habeas relief would be denied on the merits.

### b.  Petitioner's Ineffective Assistance of Counsel Claims

Petitioner's argument that counsel was ineffective for failing to object to the 4-level enhancement under Sentencing Guideline § 2K2.1(b)(6)(B) is also without merit.  The enhancement was clearly present in the agreement and was factored into the base offense level calculation.  Crim. No. 18-158, ECF No. 18 at 9–10.  Petitioner voluntarily accepted the terms of the agreement, which he acknowledged he "fully" and "perfectly" understood.  *Id.*, ECF No. 24 at 8.  He expressly agreed that the enhancement was appropriate because "he possessed the firearm in connection with another felony offense, namely a controlled substance offense."  Crim. No. 18-158, ECF No. 18 at 9.  On this record, counsel was not ineffective for failing to object to the agreed-upon four-level enhancement.  *See*, *e.g.*, *United States v. Hidalgo*, 262 F. App'x 453, 455 (3d Cir. 2008) ("[T]rial counsel's performance was not deficient because Hidalgo's plea agreement precluded trial counsel from arguing for a downward departure.  Her plea agreement specifically states that there is no basis for an upward or downward departure not set forth therein."); *Garnes v. United States*, 2010 WL 3323806, at *3 (D.N.J. Aug. 20, 2010) ("Petitioner's argument that his attorney's failure to seek a downward departure on his behalf constituted deficient performance is wholly inconsistent with Petitioner's own agreement not to seek a downward departure from the stipulated sentencing level of 25.").

Additionally, even if counsel rendered deficient performance, Petitioner cannot demonstrate prejudice.  The PSR considered by the sentencing court contained facts supporting the enhancement for possession a firearm in connection with the controlled substance offense.  Specifically, when Petitioner was arrested by law enforcement, he was in possession of 16 small bags of crack cocaine, 14 envelopes of heroin, four bags of marijuana, and a gun locking key.  *Id.* In his apartment, law enforcement found in Petitioner's bedroom, 60 containers of crack cocaine,

a digital scale, 500 wax folds, 50 small containers, and 50 small plastic bags.  PSR ¶ 12.  In the kitchen of that same apartment was a loaded nine-millimeter pistol with several rounds of ammunition.  *Id.* ¶ 13.  On these facts, Petitioner cannot show that, had he not agreed to the enhancement under the terms of his plea agreement, the Court would not have applied the four-level enhancement.  *See United States v. Shaird*, 538 F. App'x 208, 210 (3d Cir. 2013) (rejecting argument that firearm was not in "close proximity" to drugs and drug paraphernalia because it was in a different room of the same house).  Accordingly, habeas relief on this claim will be denied.

Petitioner's conclusory assertion that counsel was ineffective because he incorrectly advised Petitioner that he was a career offender is also without merit.  Neither the agreement nor the PSR contains a career offender designation, and Petitioner was not sentenced as a career offender.  Given the absence of the designation in the plea agreement, to the extent counsel did incorrectly advise Petitioner on this point, any error was clearly corrected by the time Petitioner entered into the agreement.  His decision to plead guilty, therefore, could not have been based on a potential career offender designation.  Thus, Petitioner did not suffer prejudice as a result of this alleged incorrect advice.  *See United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) ("[A]n erroneous sentencing prediction by counsel is not ineffective assistance of counsel where . . . an adequate plea hearing was conducted"); *United States v. Shedrick*, 493 F.3d 292, 300 (3d Cir. 2007) (finding that erroneous sentencing information allegedly provided by counsel can be corrected by a written plea agreement and plea colloquy that "accurately stated [the criminal defendant's] potential sentence"); *United States v. Davis*, No. 19-636, 2022 WL 17539098, at *2 (E.D. Pa. Dec. 8, 2022) (finding there is no prejudice where "Davis was advised multiple times of the correct minimum, through the written plea agreement and the Court's colloquy during the

change of plea hearing.").  Accordingly, even if this claim were timely, habeas relief would be denied on the merits.

Petitioner's assertion that he received ineffective assistance because his "only choice" was to plead guilty or face "a 5-year consecutive sentence under 18 U.S.C. § 924(c)" (ECF No. 16-1 at 44–45) also lacks merit.  At the outset, to the extent Petitioner believed at some point that his "only choice" was to plead guilty, the Court corrected this belief at the plea hearing by explaining to him in detail his right to a jury trial and the obligation of the Government to carry the burden of proof and prove the elements of the charged crimes.  Crim. No. 18-158, ECF No. 24 at 11–16. Moreover, Petitioner's counsel successfully convinced the Government not to charge him with a five-year-consecutive 924(c) charge (for possessing a firearm in relation to a drug trafficking crime) in exchange for a guilty plea.  *Id.*, ECF No. 18 at 1.  Given this benefit, Petitioner has not established that "a decision to reject the plea bargain would have been rational under the circumstances."  *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

On these facts, Petitioner has failed to demonstrate that but for his counsel's purported errors, "he would have gone to trial, received a more favorable plea deal, or have been better off pleading guilty without the benefit of a plea agreement."  *Boye v. United States*, 810 F. App'x 118, 121 (3d Cir. 2020).  Thus, Petitioner cannot show that counsel's allegedly deficient performance prejudiced him.  *See*, *e.g.*, *United States v. English*, No. 16-19, 2022 WL 5221454, at *10 (M.D. Pa. Oct. 5, 2022) (finding that, where the plea agreement provided petitioner with "substantial benefits," "the Court cannot agree that . . . counsel was ineffective in arranging the plea agreement"); *United States v. Murray*, No. 17-342, 2022 WL 3586451, at *3 (M.D. Pa. Aug. 22, 2022) (denying ineffective assistance claim where petitioner "meaningfully benefited from his decision to enter into the plea agreement" and "nothing in the record supports an inference that

[petitioner], who was properly advised of the consequences of his plea several times, would have rejected the plea agreement but for counsel's supposedly erroneous advice"); *United States v. Gardenhire*, Cr. No. 15-87, 2020 WL 6826582, at *4 (W.D. Pa. Nov. 20, 2020) (rejecting claim that defendant was prejudiced as he knowingly and voluntarily accepted plea agreement which significantly limited his sentencing exposure).  Accordingly, even if this claim were timely, habeas relief would be denied on the merits.

Petitioner's argument that counsel was ineffective because he failed to move to dismiss the charges for violation of the Speedy Trial Act (ECF No. 16-1 at 37–38) fails on the merits. Petitioner asserts only the following conclusory allegation in connection with this claim:  "[B]y October 30, 2017, the complaint had been filed and unsealed, a writ had been issued, and counsel had been appointed.  No information or indictment had been filed within the required 30 days and counsel could have easily moved the Court to dismiss the charges."  ECF No. 16-1 at 38.  Petitioner does not elaborate on this argument or analyze the claim.  The Government also fails to conduct an analysis of the claim, responding only that "a review of the docket plainly reveals no viable Speedy Trial Act violation."  ECF No. 18 at 24.  The Speedy Trial Act, 18 U.S.C. § 3161:

> sets timing deadlines for the stages of a criminal prosecution.  18 U.S.C. § 3161(a). A defendant must be indicted within thirty days of his arrest, and he must be tried within seventy days of the later of his indictment or initial appearance. *Id.* § 3161(b), (c)(1).  The Speedy Trial Act generally insists on strict conformity with its deadlines:  charges "shall be dismissed" if a defendant is not afforded a trial on time.  *Id.* § 3162(a)(2).  Nonetheless, those deadlines can be tolled for good cause.  *Id.* § 3161(h); *accord United States v. Adams*, 36 F.4th 137, 144-45 (3d Cir. 2022).

*United States v. Scarfo*, 41 F.4th 136, 176 (3d Cir. 2022).  Specifically, "[a]ny period of delay" should be excluded if it "result[s] from a continuance granted by any judge . . . on the basis of his findings that the ends of justice served . . . outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).

18

Here, Petitioner's initial appearance took place on October 30, 2017.  Crim. No. 18-158, ECF No. 5.  A day later, on October 31, 2017, on application of the parties and with Petitioner's consent, the Honorable Leda Dunn Wettre issued a continuance, excluding time from the date of the order through December 30, 2017, "to permit defense counsel the reasonable time necessary for effective preparation . . . and to allow the parties to enter into plea negotiations."  Crim. No. 18-158, ECF No. 10 at 1–2 (finding, pursuant to 18 U.S.C. § 3161(h)(7), that "the ends of justice outweigh the best interests of the public and the defendant in a speedy trial").  On January 5, 2018, Judge Wettre, on application of the parties and with Petitioner's consent, issued a second ends-of-justice continuance allowing the parties "to seek additional time to enter into plea negotiations," and excluding the time through February 28, 2018.  Crim. No. 18-158, ECF No. 11 at 1–2.  On March 6, 2018, Judge Wettre, on application of the parties and with Petitioner's consent, issued a third ends-of-justice continuance "to permit the parties a reasonable amount of time for the scheduling of the Rule 11 hearing," and excluding the time through April 30, 2018.  *Id.*, ECF No. 11 at 1–2.  On March 28, 2018, Petitioner waived indictment, entered into the plea agreement, and pled guilty.  *Id.*, ECF Nos. 15 (waiver of indictment), 16 (minute entry), 18 (plea agreement), 24 (plea hearing).

Properly excluding the days falling within the ends-of-justice continuances, this matter is well within the parameters permitted by the Speedy Trial Act and therefore, there was no violation. *See*, *e.g.*, *United States v. Morgan*, 520 F. App'x 125, 129 (3d Cir. 2013) ("Because only 26 days counting toward Morgan's speedy-trial clock elapsed between her arraignment and guilty plea, there was no violation of the Speedy Trial Act.").  Accordingly, as counsel cannot be deemed ineffective for failing to make a meritless motion, even if this claim were timely, habeas relief would be denied on the merits.  *See United States v. Bui*, 795 F.3d 363, 366–67 (3d Cir. 2015)

("[T]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.") (citing *United States v. Sanders,* 165 F.3d 248, 253 (3d Cir. 1999)); *Ridley v. United States*, No. 10-6361, 2013 WL 4596896, at *3 (D.N.J. Aug. 29, 2013) ("[H]ad counsel filed a Speedy Trial Act motion on Petitioner's behalf, the Court would most certainly have rejected it out of hand.  For this reason, there is no basis to claim that counsel committed an error 'so serious that [she] was not functioning as the 'counsel' guaranteed the Petitioner by the Sixth Amendment.'") (quoting *Strickland,* 466 U.S. at 687); *see also United States v. Tahn Le*, 542 Fed. Appx. 108, 119 (3d Cir. 2013) (concluding that because each of the delays before trial commenced were due to specific statutory exceptions to the Speedy Trial Act, the defendant's argument that his indictment should have been dismissed was frivolous); *Andino v. United States*, No. 19-00001, 2022 WL 17338000, at *10 (E.D. Pa. Nov. 30, 2022) ("Because Andino's speedy trial rights were not violated, any motion to dismiss based on an alleged violation of the Speedy Trial Act would have lacked merit.").

Petitioner also argues that counsel provided ineffective assistance because he failed to investigate the law and facts of the case and discover an alleged viable motion to suppress the firearms evidence, and failed to move to suppress the firearms evidence.  ECF No. 16-1 at 5, 30–34, 38–39.  This argument is without merit.

"Effective assistance does not require counsel to file every possible motion, including suppression motions—only those with a 'solid foundation.'"  *United States v. Bristol*, No. 18-375, 2022 WL 2068048, at *6 (E.D. Pa. June 8, 2022) (quoting *United States v. Swinehart*, 617 F.2d 336, 341 (3d Cir. 1980)).  To demonstrate prejudice, the petitioner must show he likely would have prevailed on the suppression motion and that, after prevailing, there is a reasonable probability he would not have been convicted (including through a guilty plea). *Thomas v. Varner*, 428 F.3d 491,

502 (3d Cir. 2005); *see also Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (finding that, to demonstrate prejudice, "the defendant must [] prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence").

The Fourth Amendment provides that "'[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . .'" *Id.* at 1037 (quoting U.S. Const. amend. IV.)  Generally, a seizure is reasonable under the Fourth Amendment "'only if based on probable cause' to believe that the individual has committed a crime." *Id.* (quoting *Dunaway v. New York,* 442 U.S. 200, 213 (1979)).

Petitioner asserts that he had a "meritorious suppression of evidence claim of an unlawful search" (ECF No. 16-1 at 31) because the search warrant at issue was based on the following allegedly insufficient information:

> [Irvington Police Department ("IPD")] officers observed a single suspected drug sale in a public parking lot involving Williams driving a Jeep Cherokee and meeting with [an individual] who had implicated Williams as the person who had sold him the drugs seized by IPD officers. Based on this single, isolated drug sale, IPD officers were somehow able to convince a Judge to issue a search warrant for Williams' girlfriend's apartment at which Williams resided.

*Id.* at 31–32.  Petitioner further argues that "were the firearm evidence recovered by IPD officers from an invalid search warrant suppressed, it is clear that [he] would not have pled guilty to possessing a firearm as advised by counsel."  ECF No. 16-1 at 34.

Petitioner has not demonstrated that he had a viable motion to suppress the firearms evidence on the basis that the search warrant was invalid.  His description of the probable cause information contained in the warrant—in particular, his allegation that the warrant was based on a "single, isolated drug sale" in a parking lot—is incorrect.  Contrary to Petitioner's assertions, the

warrant describes multiple incidents of him travelling from his residence to engage in transactions involving controlled dangerous substances ("CDS").

The warrant states that a confidential informant ("CI") provided information regarding a cocaine and heroin distribution operation run by Petitioner.  *See* ECF No., 18, Exhibit D at 5.  The CI asserted that Petitioner uses a particular car to bring cocaine and heroin that he sells to people in a particular housing area.  *Id.*  The CI identified Petitioner from a motor vehicle photograph.  *Id.*  The CI provided a phone number that he/she used to call and order CDS from Petitioner and, using that number, the CI made arrangements to purchase CDS from Petitioner.  *Id.*  Before the purchase, Petitioner was observed leaving his residence with a black bag and entering his car.  *Id.*  He drove to the meeting location with the CI.  *Id.* at 6.  The CDS transaction between the CI and Petitioner was observed, and the CDS was tested and returned positive results.  *Id.*  A second CDS transaction between Petitioner and the CI was arranged and observed.  *Id.* at 7–8.  Petitioner again left his residence carrying a black bag and entered his car, which he drove to the prearranged location and completed the CDS transaction with the CI.  *Id.* at 8.  Testing of the CDS again returned positive results.  *Id.*  A third transaction occurring in a similar fashion was observed.  *Id.* at 9–10.  The warrant also stated that Petitioner held an electricity account in his name at his residence.  *Id.* at 7.

Given Petitioner's misrepresentation of the information in the warrant and his conclusory allegation, based on that incorrect information, that the warrant was invalid, Petitioner has not established that he had a viable motion to suppress the firearm evidence.  Thus, he has not established that counsel rendered deficient performance by failing to discover the alleged invalid warrant and failing to move to suppress the firearms evidence.  *See Sanders*, 165 F.3d at 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").  As Petitioner has not demonstrated that he

would have prevailed on the motion, he has not demonstrated prejudice.  *See Thomas*, 428 F.3d at

502.  Accordingly, even if this claim were timely, habeas relief would be denied on the merits.

### D.  Revocation of Supervised Release

Petitioner argues that counsel was ineffective because he failed to consult with Petitioner

about an appeal and file an appeal in connection with his revocation of supervised release

proceedings.  ECF No. 16-1 at 49.  Petitioner alleges counsel told him that "any sentence for any

revocation of supervised release would be concurrently imposed to convince [him] to plead guilty

in the drug/firearm case";[4] however, "the Court misconstrued its authority under both 18 U.S.C. §

3584(a)[5] and U.S.S.G. § 7B1.1, Part B Commentary,[6] to impose a concurrent sentence, and

instead imposed a consecutive 33-month prison term."  ECF 16-1 at 51–52.  Petitioner argues that

counsel provided ineffective assistance by "failing to consult with [Petitioner] about an appeal and

fail[ing] to file an appeal," "knowing that [he] wanted to appeal the consecutive sentence that

counsel had led him to believe would be concurrent" (the "Appeal Claims").  ECF No. 16-1 at 49,

---

[4] While Petitioner does not appear to be raising an ineffective assistance claim based on this blanket assertion, the Court notes that any such claim would be foreclosed by Petitioner's plea agreement and plea hearing colloquy, discussed in detail above.  18-158, ECF Nos. 18 at 7 ("No Other Promises" provision of plea agreement), 24 at 7–10 (plea hearing colloquy).

[5] 18 U.S.C.A. § 3584 provides, in relevant part:

(a) Imposition of concurrent or consecutive terms.--If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. *Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently*.

*Id.* (emphasis added).

[6] U.S.S.G. § 7B1.1 (entitled "Classification of Violations (Policy Statement)"), Part B Commentary provides:  "Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."

23

52.  The Government asserts that these claims are untimely, not cognizable on habeas review, and without merit.  ECF No. 18 at 30–34.

### 1.  Timeliness

In his timely July 2, 2019, § 2255 motion, Petitioner argued that counsel was ineffective "at sentencing for failing to argue that the district court exceeded its authority under § 3583(e)(3) by sentencing Petitioner to an additional [term of] supervised release in excess of his original term of supervised release."  19-15019, ECF No. 1-1 at 9; *see also id.,* ECF No. 1-1 at 10 (arguing that "a district court cannot simply bypass § 3583(e)(3) and impose a revocation sentence of reimprisonment *and* additional supervised release in excess of the original term of supervised release . . . .") (emphasis added).[7]  Petitioner raises an appeal-related issue for the first time in his letter to the Court dated January 3, 2022—which was filed nearly three and a half years after Judge Arleo sentenced him on August 13, 2018 (Crim. No. 07-511, ECF No. 121 (judgment)), and nearly two and a half years after Petitioner filed his initial motion (19-15019, ECF No. 1).  *See* ECF No. 11 at 2 (Petitioner's letter requesting leave to amend:  "The amended motion . . . raises multiple additional ineffective assistance of counsel claims that Petitioner discovered after he read the American Bar Association Rules of Professional Conduct that explains, among other things, that his attorney was required to consult with him about an appeal.").  Accordingly, as the Appeal Claims were raised well after the expiration of the applicable one-year limitations period, *see* 28 U.S.C. § 2255(f)(1), the claims are untimely unless they relate back to the timely filed revocation-of-supervised-release claim in the original § 2255 motion.  *Santarelli*, 929 F.3d at 101.

---

[7] It does not appear that Petitioner reasserted this claim in his 2022 all-inclusive motion.  ECF No. 16-1. To the extent he intended to assert it, however, it is without merit because Judge Arleo did not sentence Petitioner to an additional term of supervised release on this violation.  *See* Crim No. 07-511, ECF No. 121 at 2 (revocation of supervised release judgment: "the previously imposed term of supervised release is revoked and the defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 33 months").

The Court finds that the claims do not relate back.  Petitioner's claim that counsel failed to argue at sentencing that the Court lacked authority to impose an additional term of supervised release (which it did not, in fact, impose) is both factually and legally distinct from his claims that counsel neglected to consult with him about and file an appeal on the basis that "the Court misconstrued its authority . . . to impose a concurrent sentence, and instead imposed a consecutive 33-month prison term."  ECF 16-1 at 51–52.  Given the differences in these claims—including (a) the stage of the proceedings (sentencing vs. post-sentencing); (b) the relevant statutory provisions (18 U.S.C. § 3583(e) (revocation of supervised release) vs. 18 U.S.C. § 3584(a) (imposition of concurrent or consecutive terms)); and (c) the grounds for the alleged ineffectiveness (an objection at sentencing vs. failing to consult about and file an appeal)—the Court finds that the Appeal Claims do not relate back to the supervised release claim and, thus, are untimely.  *See, e.g., See United States v. McKines-El*, No. 99-035, 2005 WL 1215953, at *7 (M.D. Pa. Apr. 26, 2005) ("For an untimely § 2255 claim to relate back, the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings.  Nor does the assertion of a particular alleged instance of ineffective assistance of counsel grant license to assert an independent instance of ineffective assistance of counsel after the limitations period has expired."); *see also Riggins v. United States*, No. CIV 10-1557, 2011 WL 6210673, at *5 (E.D. Pa. Dec. 14, 2011) ("Because Riggin's proposed ineffective assistance of counsel claim is not an effort to amplify his constitutional challenge . . . and does not share a common core of operative facts with his sentencing claims, the amendment does not relate back to the date of his original petition."); *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999) (failure to file an appeal is not the same type of error as failure to seek a downward departure or challenge the drug type at sentencing).  Accordingly, habeas relief on these claims will be denied.

### 2.   The Appeal Claims Are Not Cognizable on Habeas Review

Even if the Appeal Claims were timely, the Court would deny relief because the Sixth Amendment right to counsel does not extend to revocation proceedings.  *See United States v. Manuel*, 732 F.3d 283, 291 (3d Cir. 2013) (finding that a "revocation hearing is not a criminal prosecution" and that "there is no constitutional right to representation by counsel at a parole revocation hearing") (citing *Morrissey v. Brewer,* 408 U.S. 471, 480 (1972); *Gagnon v. Scarpelli,* 411 U.S. 778, 783–90 (1973)); *United States v. Owen*, 854 F.3d 536, 541 (8th Cir. 2017) ("The Sixth Amendment right to counsel applies only in a criminal prosecution, and a revocation hearing is an entirely different type of proceeding."); *United States v. Pelensky*, 129 F.3d 63, 68 n.8 (2d Cir. 1997) ("Among the fundamental constitutional protections that do not apply in the context of supervised release revocation proceedings [is] the right to counsel.").[8]

As there is no Sixth Amendment right to counsel at a revocation proceeding, Petitioner cannot establish an entitlement to habeas relief on the Appeal Claims.  *See*, *e.g.*, *Davilla v. United States*, No. 109-60, 2021 WL 1216880, at *2 (S.D. Ga. Feb. 23, 2021) ("Without a Sixth Amendment right to effective counsel, Petitioner is not entitled to relief for ineffective assistance of counsel, as relief under § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal.") (citation and quotations omitted); *Robinson*, 2020 WL 2614865, at *2 ("[B]ecause Petitioner has failed to establish that he had a constitutional right to counsel at his revocation proceeding, he cannot show

---

[8] *See also Robinson v. United States*, No. 06-1322, 2020 WL 2614865, at *2 (D.S.C. May 22, 2020) ("The Fourth Circuit's conclusion that the Sixth Amendment right to the effective assistance of counsel is not applicable in a revocation proceeding is consistent with that of every circuit court that has considered the issue. Petitioner has not cited, nor is the Court aware of, any circuit court that has reached a contrary conclusion.") (citing *Owen*, 854 F.3d at 541; *United States v. Boultinghouse*, 784 F.3d 1163, 1171 (7th Cir. 2015); *Manuel*, 732 F.3d at 291; *United States v. Spangle*, 626 F.3d 488, 494 (9th Cir. 2010); *United States v. Lester*, 76 F.3d 380, 1996 WL 28970, at *3 (6th Cir. 1996); *United States v. Meeks*, 25 F.3d 1117, 1123 (2d Cir. 1994), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694 (2000)).

that he was deprived of a constitutional right to the effective assistance of counsel, and his petition must therefore be denied."); *Peery v. Dir., Virginia Dep't of Corr.*, No. 16-225, 2017 WL 3996429, at *6 (W.D. Va. Sept. 11, 2017) ("[B]ecause Peery had no constitutional right to counsel at his revocation hearing, he necessarily had no right to counsel on appeal from that hearing"); *Williams v. Raynor Rensch & Pfieffer*, No. 11-446, 2015 WL 2127095, at *16 (D. Neb. May 6, 2015) (finding claim for a Sixth Amendment violation of right to effective assistance of counsel "fails at the outset for the simple reason that the protections of the Sixth Amendment do not apply to supervised release proceedings").   Accordingly, even if the Appeal Claims were timely, relief would be denied.

## III.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255.   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."   *Slack v. McDaniel*, 529 U.S. 473,

484 (2000).   Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

## IV.   CONCLUSION

For the foregoing reasons, the § 2255 motion (ECF No. 16-1) will be denied and a certificate of appealability will not issue.   The motions to docket the "Corrected Motion" and consolidate the motions to vacate the sentences in Petitioner's "Drug/Firearm and Revocation of Supervised Release Cases" (ECF No. 15); to conduct discovery, expand the record, and hold an evidentiary hearing (ECF No. 16); and to expedite and be released on bail (ECF Nos. 20, 21) will also be denied.

An appropriate Order follows.

DATED: July 24, 2023

s/ Claire C. Cecchi

**CLAIRE C. CECCHI, U.S.D.J.**